IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| WESLEY EUGENE BAKER, | * |
| Plaintiff, | * |
| v. | CIVIL NO.: WDQ-05-3207 |
| MARY ANN SAAR, *et al.* | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

Memorandum Opinion

Plaintiff Wesley Eugene Baker's execution by lethal injection is scheduled for the week of December 5, 2005. Pending before this Court is Mr. Baker's request for a temporary restraining order and preliminary injunction barring the Defendants from executing [him] in the manner they currently intend." Complaint for Injunctive Relief and Declaratory Injunction at ¶ 68. Also pending is his motion to remand this case to the Circuit Court for Baltimore City. For the following reasons, the motions will be denied.

I. Procedural Background

Mr. Baker was convicted of the first degree murder of Mrs. Jane Tyson and sentenced to death on October 30, 1992. His guilt has been fully adjudicated, and he has exhausted all avenues of post conviction modification of sentence. On November 28, 2005, Mr. Baker filed this Complaint for Injunctive Relief and Declaratory Judgment and accompanying Motion for Temporary Injunction in the Circuit Court for Baltimore City. The case was removed to this

1

Court on November 29, 2005.

II. Analysis

Mr. Baker seeks declaratory and injunctive relief arguing that the manner in which the State plans to execute him violates state law[1] as well as his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and Maryland's Declaration of Rights. Mr. Baker does not deny the Defendants' authority to execute him but contends that the execution must be accomplished "in a manner that does not unnecessarily risk the infliction [of] unnecessary pain and suffering." Complaint for Injunctive Relief and Declaratory Injunction at ¶ 5.

Baker seeks to delay the execution so that he can conduct discovery to determine, *inter alia*, (1) whether implementation of the current execution protocol will likely be painful and (2) whether an alternative means, including the use of different chemicals and/or the use of trained individuals such as doctors and nurses to administer the protocol would diminish the likelihood of pain. Mr. Baker further attacks the protocol for alleged administrative irregularities surrounding its adoption, and argues that it does not comport with § 3-905 of the Correctional Services Article of the Maryland Code. He contends that these infirmities compel a stay of execution for discovery and changes to the existing protocol.

A. Injunctive Relief

---

[1] Specifically, Baker claims that the current execution protocol violates Md. Code Ann., Corr. Serv., § 3-905 (Method of Execution) and was enacted in violation of Maryland's Administrative Procedure Act ("APA"). When the court refers to the execution protocol, it is referring generally to the "Execution Operations Manual," dated June 12, 2002 and the "Lethal Injection Checklist" dated June 12, 2004.

2

In determining whether to grant the stay of execution, the Court must consider: 1) the likelihood of irreparable harm to Mr. Baker if the stay is denied; 2) the likelihood of harm to the State if the stay is granted; 3) the likelihood that Mr. Baker will succeed on the merits of his Eighth Amendment and state law claims; and 4) the extent to which Mr. Baker has delayed unnecessarily in bringing his claim. *Nelson,* 541 U.S. 637 (2004); *see also Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353 (4th Cir. 1991); *Darr v. Massinga,* 838 F.2d 118 (4th Cir. 1988); *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189 (4th Cir. 1977); *Oken v. Sizer,* 321 F.Supp.2d 658 (D.Md. 2004). These considerations, however, do not carry equal weight. *Oken,* 321 F.Supp.2d at 666.

Underlying the Court's analysis, however, is the strong presumption against granting a stay of execution. Last minute stays of execution interfere with the orderly processes of justice and should be avoided in all but the most extraordinary circumstances. *Stockton v. Angelone,* 70 F.3d 12, 13 (4th cir. 1995); *Reid v. Johnson,* 333 F.Supp.2d 543 (E.D.Va. 2004).

1. Mr. Baker's Harm and the Likelihood of his Success on the Merits.

Mr. Baker must establish the likelihood that he will suffer an unconstitutionally painful execution under the current protocol; i.e., he must show that the contemplated execution would be unconstitutionally cruel and unusual. Inextricably connected to this showing of harm is a showing that he is likely to succeed on the merits of his Eighth Amendment claim.

In Maryland, execution by lethal injection involves the administration of sodium pentothal (a barbiturate to induce unconsciousness), pancuronium bromide (a paralyzing agent)

3

and potassium chloride (to cause cardiac arrest).[2]

To demonstrate an Eighth Amendment violation, Mr. Baker must show that there is a substantial risk that he will be subjected to an unnecessary and wanton infliction of pain contrary to contemporary standards of decency.  *Helling v. McKinney,* 509 U.S. 25, 36 (1993); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Reid v. Johnson,* 333 F.Supp.2d 543 (E.D.Va. 2004).  As Articles 16 and 25 of the Maryland Declaration of Rights are in *para materia* with the Eighth Amendment, Mr. Baker must make the same showing to establish a violation under Maryland law.  *Aravanis v. Somerset County,* 339 Md. 644, 656 (Md. 1995), *Harris v. State of Maryland,* 312 Md. 225, 237 n. 5 (Md. 1988); *Walker v. State of Maryland,* 53 Md. App. 171, 180 (Md. 1982).

The Maryland Court of Appeals reviewed the state's execution protocol in *Oken v. State of Maryland* and held that the process by which Maryland effects the death penalty does not constitute cruel and unusual punishment.  *Oken,* 381 Md. 580 (Md. 2004).[3]

As it is unlikely that Mr. Baker will prevail on his Eighth Amendment and related claims, he has asserted an insubstantial harm.

---

[2] In a previously submitted affidavit and testimony at today's hearing, Mr. Baker's expert physician, Mark J. S. Heath, M.D. explained that there is sufficiently available medical knowledge and expertise by which the state can increase the likelihood that Mr. Baker may have a pain-free execution.

[3] From the detailed discussion of the execution protocol found in Chief Judge Bell's dissent in *Oken*, it is clear that the Maryland Court of Appeals was acquainted with the alleged deficiencies in the chemicals and procedures in the State's execution procedure when it determined that the execution protocol does not offend the Constitution.  *Oken,* 381 Md. at 581-583 (Bell, C.J., dissenting).  The Supreme Court's vacatur of the District Court's stay of execution in *Sizer v. Oken* similarly establishes that Maryland's execution protocol does not offend the Constitution.  *Oken,* 542 U.S. 916 (2004).

Mr. Baker's assertion that he will be executed under a protocol that violates state law and was adopted in violation of state administrative procedures also states an insubstantial injury. Any procedural defect in the adoption of the protocol did not harm Mr. Baker because such a defect did not lead to adoption of a cruel and unusual means of executing him.

2.  The Likelihood of Harm to the State

Balanced against the insubstantial harms identified by Mr. Baker is the State's significant interest in enforcing its criminal judgments.  *Nelson,* 541 U.S. at 650; *In re Blodgett,* 502 U.S. 236, 239 (1992); *McCleskey v. Zant,* 499 U.S. 467, 491 (1991).  That interest is heightened when lengthy state and federal proceedings reviewing the conviction have run their course.  *Calderon v. Thompson,* 523 U.S 538, 555-556 (1998).  In this case the balance of harms favors the state.

3. Mr. Baker's Delay in bringing his claim

Given the State's significant interest in enforcing its judgments, there is a strong presumption against the grant of a stay when the claim could have been considered on the merits without a stay.  *Nelson,* 541 U.S. 637.  As the execution protocol has been in effect since June 2004,  Mr. Baker could have challenged the protocol well before this suit was filed on November 28, 2005.[4]

---

[4] Dr. Heath acknowledged that although he only recently acquired information confirming his belief that potassium chloride is the cause of death in executions under the State's protocols, that information merely bolsters testimony he has previously given under oath.  He also acknowledged that post mortem evidence about the blood concentrations of sodium pentothal–which suggests the possibility that there was insufficient anesthesia in executions conducted under a protocol similar to Maryland's–had been known by him more than a year ago.  Nothing proffered by Mr. Baker indicates why his challenge to the State's protocol could not have been made before November 28, 2005.

5

B.  Motion to Remand

Mr. Baker has moved to remand this action to the Circuit Court for Baltimore City because his complaint primarily concerns matters of state law.  Defendants counter that Mr. Baker's state law claims turn on questions of federal law.

The gravamen of Mr. Baker's complaint--that the State's execution protocol is cruel and unusual punishment--favors adjudication in this Court.

Accordingly, Mr. Baker's motion to remand this proceeding to the Circuit Court for Baltimore City will be denied.


III. Conclusion

For the reasons discussed above, the stay of execution and motion to remand will be denied.



December 1, 2005                                          /s/
Date                                              William D. Quarles, Jr.
                                                  United States District Judge